UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GARY RIHN & <br> BONITA RIHN, <br>      Plaintiffs, <br> v. <br><br> TYOKA JACKSON <br><br>      Defendant. | ) <br> ) <br> ) <br> ) <br> )   Case No.  4:07CV00197ERW <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' FIRST MOTION IN LIMINE TO EXCLUDE QUESTIONS, COMMENTS, OPINION TESTIMONY OR STATEMENTS OF DEFENDANTS' EXPERT DR. SMITH CONCERNING:
1) THE CREDIBILITY OF PLAINTIFF GARY RIHN;
2) PLAINTIFFS' USE OF THE LEGAL SYSTEM; AND
3) THE CREDIBILITY OF GARY RIHN'S TREATING PHYSICIAN DR. ARONOV**

COME NOW Plaintiffs, Gary Rihn and Bonita Rihn, and for their Memorandum in Support of Plaintiffs' First Motion in Limine to Exclude Questions, Comments, Opinion Testimony or Statements of Defendants' Expert Dr. Smith Concerning: 1) the Credibility of Plaintiff Gary Rihn; 2) Plaintiffs' Use of the Legal System; and 3) the Credibility of Gary Rihn's Treating Physician Dr. Aronov, state as follows:

**I.      INTRODUCTION.**

Plaintiff Gary Rihn has filed suit against Defendant Tyoka Jackson for battery. Plaintiff Bonita Rihn has made a derivative claim for loss of consortium. Gary Rihn is a flight attendant, employed by Northwest Airlines. On February 13, 2005, while working a flight from Memphis, Tennessee to St. Louis, Rihn instructed Jackson to stow his bags to prepare for landing. On the descent into St. Louis, the Defendant failed to comply with Rihn's instructions, struck Rihn with both hands, causing him to leave his feet, fly across the cabin, land on another passenger and the seat separator. Defendant's acts violated Federal Aviation Regulation Section 121.580,

1

constituting per se liability. As a result of Defendant's assault and battery, Plaintiff Rihn suffered physical injuries as well as post-traumatic stress syndrome/anxiety. Plaintiff Bonita Rihn alleges loss of consortium as a result of Defendant's battery of her husband. Plaintiffs seek both compensatory and punitive damages.

**II.     DR. SMITH'S EXPERT TESTIMONY IMPROPERLY COMMENTING ON THE CREDIBILITY OF PLAINTIFF GARY RIHN AND HIS TREATING PHYSICIAN DR. ARONOV SHOULD BE EXCLUDED BECAUSE IT IS UNDULY PREJUDICIAL, INVADES THE PROVINCE OF THE JURY AND IS AN IMPROPER ATTEMPT TO DISCREDIT PLAINTIFFS FOR EXERCISING THEIR RIGHTS TO UTILIZE THE JUDICIAL SYSTEM**

Plaintiff Rihn did not depose defendant's expert Dr. Stacey Smith because Rule 26 reports are designed to eliminate or minimize the need to depose experts. See <u>Fielden v. CSX Transportation, Inc.</u>, 482 F.3d 866, 871 (6th Cir. 2007); <u>Sowell v. Burlington N. & Santa Fe Ry. Co.</u>, No. 03-C-3923, 2004 WL 2812090, at *5 (N.D.Ill.Dec.7, 2004). In the Rule 26 report, Dr. Smith improperly impugns Mr. Rihn's credibility and offers her **expert opinion** that Plaintiff Rihn is lying and exaggerating his symptoms for purposes of this litigation. Dr. Smith explicitly premises her opinion that Mr. Rihn does not have post-traumatic stress syndrome (or any other serious psychological injury arising from defendant's battery of Mr. Rihn) because Mr. Rihn "is exaggerating his complaints and navigating the treatment and litigation processes to favor his legal claim." (Ex. 1, p. 21.) As will be shown, this tactic is an illegal boot-strapping effort that the Courts have consistently rejected.

For the convenience of the Court, plaintiff has attached a list of the inadmissible statements made in Dr. Stacey Smith's Rule 26 report. See Exhibit 2, attached hereto. Each of the listed statements attacks the credibility of Mr. Rihn or Dr. Aronov directly, or attacks their credibility based on Mr. Rihn's decision to seek compensation for his injuries through the legal system.

**A. The Court should exclude the statements and opinions by Dr. Smith improperly attacking Plaintiff's credibility.**

The "expert witness" testimony of Dr. Smith that Mr. Rihn is not credible is inadmissible as a matter of law. See *United States v. Scop*, 846 F.2d 135, 142 (2d Cir.1988). "[E]xpert witnesses may not offer opinions ... based on their personal assessment of the credibility of another witness's testimony.  The credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at the trial." *Id*. "[C]ompetency is for the judge, not the jury. **Credibility, however, is for the jury - the jury is the lie detector in the courtroom**." *U.S. v. Azure*, 801 F.2d 336, 340 (8th Cir. (N.D.) 1986), quoting *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir.1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976 (1974)(Upholding trial court's rejection of defendants' proffered expert psychiatric testimony that a government witness was a sociopath who would lie in testifying).  "[E]xpert testimony going to the issue of credibility is not admissible." *Westcott v. Crinklaw*, 68 F.3d 1073, 1077 (8th Cir. 1995).  No expert may testify as a "human lie detector." See *U.S. v. Williams*, 133 F.3d 1048, 1053 (7th Cir. (Wis.) 1998)(Trial court's admission of "human lie detector" evidence was plain error); *United States v. Petersen*, 24 MJ 283 (CMA 1987)("Human lie detector" evidence prohibited).  The same result holds under Missouri law. See *State v. Taylor*, 663 S.W.2d 235, 239 (Mo. banc 1984)("[E]xpert opinion testimony is not admissible as it relates to credibility of witnesses.")

In *Azure*, the prosecution offered expert testimony that the story of the minor victim was believable and that the expert could "see no reason why [the victim] would not be telling the truth in this matter." 801 F.2d at 339.  The Court of Appeals for the Eighth Circuit reversed the conviction and remanded, finding that "no reliable test for truthfulness exists" and that the expert

3

improperly "put a stamp of believability" on the victim's story which the jury might have improperly relied upon. *Id*. at 340-341.

*Westcott v. Crinklaw*, 68 F.3d 1073 (8th Cir. 1995), was a wrongful death case against a police officer who shot plaintiff's decedent. The defendant police officer made several admissions in the immediate aftermath of the shooting including that he did not know whether the suspect (plaintiff's decedent) had a gun in his hand. *Id*. at 1075.  The defense offered expert testimony that the officer suffered from post-traumatic stress syndrome after the shooting, and that this may cause a person "to make inaccurate, unreliable and incomplete statements." *Id*.  The Eighth Circuit reversed and remanded, finding that "the accuracy of these statements [defendant's admission] is a pure question of credibility" and the expert's testimony should have been excluded. *Id*. at 1075-1077.

The testimony of Defendant's expert Dr. Smith concerning Mr. Rihn's credibility is inadmissible for the same reasons. She offers her "expert", purportedly "scientific" opinion that Mr. Rihn lacks credibility in this case.  These are direct opinions on Gary Rihn's credibility, including the truthfulness of his testimony.  As indicated above, this type of testimony invades the province of the jury, and is improper as a matter of law and not admissible.  In other words, Dr. Smith's opinion that Mr. Rihn is exaggerating his symptoms is indisputably "based on [her] personal assessment of the credibility of another witness's testimony." *Scop*, 846 F.2d at 142.

Statements directly attacking Mr. Rihn's credibility based on his use of the legal system will be addressed in Section B, infra.  Other statements attacking the credibility of Mr. Rihn's testimony includes the following:

> His claim that his move to Pennsylvania was as a result of this incident **is not credible.**
> His current job situation would be considered superior and preferable…
> (Ex. 1, p. 19.)

"For June I had to go back [to work] because of (lack of) seniority, so I took a military leave." (He chose not to fly.  **There is no convincing evidence** he was incapable.  There is no reported re-traumatization to cause increased symptoms.) (Ex. 1, p. 6.)

JOB HISTORY: Includes working for his father, building swimming pools for two years after high school.  At age 23, he joined Northwest Airlines and has remained with them since. (Records indicate his job history is more varied.) (Ex. 1, p. 8.)

[Mr. Rihn] attended no college.  Denied attending any type of vocational school. (Records show otherwise). (Ex. 1, p. 9.)

[Mr. Rihn reported] Mood today was "nervous." (He appeared calm.) (Ex. 1, p. 9.)

[Mr. Rihn] was written-up [in his Northwest Airlines personnel file] on one occasion in 1989 for being $16 short in his cash deposit, termed "a serious matter" by his supervisor. (Ex. 1, p. 10.)

Mr. Rihn's resume shows he graduated from Shaler High School in Pittsburgh, Pennsylvania.  He also attended the Boyd (travel industry?) School. (Note: he denied other/vocational schooling here today.) (Ex. 1, p. 10.)

(Note: these records indicate **Mr. Rihn minimized his work history here today**.) (Ex. 1, p. 10.)

He reported [in deposition] his Northwest Airline salary was $55,000 per year (10K higher than he reported here). (Ex. 1, p. 12.)

The (suspected incomplete) Northwest Airline personnel file of Mr. Rihn was reviewed. (Ex. 1, p. 13.)

Dr. Smith repeatedly uses purported and manufactured "inconsistencies" in Mr. Rihn's statements in an attempt to generally attack Mr. Rihn's credibility, often parenthetically concluding that Mr. Rihn is not telling the truth.  None of these supposed inconsistencies is relevant or immaterial to the issues in this case in any way.  Not only is Dr. Smith improperly commenting on Mr. Rihn's credibility, she is improperly making findings of fact, again invading the province of the jury.  It is not the job of this purported psychological expert to determine as a question of fact whether or not Mr. Rihn had vocational training!  And none of these supposed inconsistencies concerning Mr. Rihn's educational or work background have *anything* to do with

5

the relevant issues in this case or with Mr. Rihn's injuries.  Dr. Smith's only possible rationale for continually impeaching Mr. Rihn with her own independent findings of fact on these irrelevant issues is to reinforce her improper opinion that Mr. Rihn is not credible and is faking or exaggerating his injuries.  Each such statement should be stricken.

      **B.**      **The Court should exclude all statements and opinions by Dr. Smith improperly attacking Plaintiff's credibility based on his exercise of legal rights.**

           **1.**      **Dr. Smith explicitly argues that Plaintiff is not credible because of his exercise of legal rights.**

Dr. Smith bases her attack on Mr. Rihn's credibility and motives on the fact that he has utilized his rights under the judicial system, contending that Mr. Rihn "is exaggerating his complaints and navigating the treatment and litigation processes to favor his legal claim."  The law is clear that a party may not offer expert testimony "in an attempt to discredit plaintiffs for exercising their right to utilize the judicial system to seek recovery for their injuries." *Yingling v. Hartwig*, 925 S.W.2d 952, 956 (Mo.App. W.D. 1996).  The Court in *Yingling* held that the trial court's admission of a physician's expert opinion, to the effect that patients involved in litigation have subjective complaints of injury for a longer period of time than patients not involved in litigation, was prejudicial and required a new trial. *Id*. at 955-957.

In her Rule 26(b)(2) report, Dr. Smith cites an "MMPI computer printout" for the conclusion that "such a large number of unusual symptoms is common in individuals involved in personal injury litigation." (Ex. 1, pp. 14.)  Dr. Smith contends that "The setting of ongoing civil litigation inevitably raises the specter of secondary gain[,]" and offers her opinion that "Secondary gain is definitely present here." (Ex. 1, pp. 20.)  Dr. Smith's opinions concerning Mr. Rihn's psychological injuries arising from Defendant's assault are entirely premised and

6

dependent on her inadmissible opinion testimony that Mr. Rihn is exaggerating his symptoms for personal gain.

The Court in *Yingling* addressed similar "secondary gain" or "litigation syndrome" testimony, stating:

> **Dr. Neighbor's testimony was, in essence, a comment on a plaintiff's credibility**; **a statement that plaintiffs generally falsify their subjective complaints for the purpose of furthering their lawsuit and increasing their damages.  Such a comment by an expert witness is inadmissible.** *Id*. at 956. [Internal citations omitted.] [Emphasis supplied.]

Dr. Smith's testimony in this case is indistinguishable.  Notably, although *Yingling* is a Missouri case, the Court was applying the same principle as that adopted by the federal cases discussed above: **That credibility is the sole province of the jury and cannot be invaded by expert opinion**.  This is particularly the case where the expert attacks a party's use of the legal system in a blatant effort to prejudice the jury.  Thus, Dr. Smith's opinions concerning "secondary gain" or "litigation syndrome" by those engaged in personal injury litigation are inadmissible as a matter of law.  Dr. Smith's testimony and conclusions concerning Mr. Rihn's injuries appear entirely dependent on her opinion that Mr. Rihn is not credible because of his involvement in this lawsuit.

The following statements from Dr. Smith's report on their face directly attack Mr. Rihn's credibility and his exercise of his legal rights:

> Axis IV:    Ongoing litigation (which is affecting his mood). (Ex. 1, p. 19.)
>
> [Mr. Rihn] decided to sue, and then was evaluated by a psychologist.  I do believe Mr. Rihn developed some mild psychological symptoms in the aftermath of this discrete event but **he is exaggerating his difficulties**. (Ex. 1, p. 19.)
>
> [B]ringing litigation is inherently very stressful.  A considerable portion of his complaints result from this ongoing stressor (the litigation), with likely some resulting guilt. (Ex. 1, p. 19.)

>[Plaintiff] declined any type of medication for his psychological complaints.  This is not reasonable, and **suggests a stronger commitment to his litigation than to the resolution of his alleged complaints.**  His motivation to pursue treatment is absent.  **He is invested in presenting himself as damaged for the purpose of this litigation.** (Ex. 1, p. 19.)
>
>**The setting of ongoing civil litigation inevitable raises the specter of secondary gain.  Secondary gain is definitely present here.** (Ex. 1, p. 20.)
>
>**Mr. Rihn was already suing Mr. Jackson when he entered treatment with Dr. Aronov.  This is substantial motivation to fail to improve, or to minimize or deny improvement**, which would clinically be expected with the passage of time, and continued exposure to flying.  (Ex. 1, p. 20.)
>
>**[Plaintiff] is exaggerating his complaints and navigating the treatment and litigation processes to favor his legal claim**. (Ex. 1, p. 21.) [Emphasis supplied.]

Dr. Smith charges Gary Rihn with exaggerating his psychological complaints to further his legal claim, and explicitly finds that specific testimony by Mr. Rihn is "not credible." (Ex. 1, p. 19.)  Clearly these statements not only directly attack Mr. Rihn's credibility, in violation of the rule announced by the Eighth Circuit in <u>Azure</u>, they do so "in an attempt to discredit plaintiffs for exercising their right to utilize the judicial system to seek recovery for their injuries." <u>Yingling v. Hartwig</u>, 925 S.W.2d 952, 956 (Mo.App. W.D. 1996).  All of the above statements should therefore be excluded.

>   **2.     The Court should preclude Dr. Smith from relying on the MMPI to support her opinion that Mr. Rihn is exaggerating his symptoms and is not credible and that Mr. Rihn has a "neurotic personality style."**

Compounding the potential prejudice to plaintiffs and the expert's invasion of the province of the jury, Dr. Smith even relies on a psychological "test", the MMPI, to support her opinion that Mr. Rihn is lying and not credible. (Ex. 1, p. 14-15.)  Dr. Smith contends that "The MMPI computer printout noted claiming such a large number of unusual symptoms is common in individuals involved in personal injury litigation." (Ex. 1, p. 14.)  Dr. Smith relies on the fact that this MMPI "suggests a tendency to exaggerate symptoms" by Mr. Rihn in order to argue that

8

Mr. Rihn is not credible. (Ex. 1, p. 14.) Dr. Smith quotes the "summary content" on the test by a "Dr. Wetzel" that "Mr. Rihn is very uncomfortable and wants you to know it. He is probably overstating his symptoms to a degree."

The fact that an expert uses "a psychological label or diagnosis" as a way of testifying to credibility does not make such testimony proper. See Westcott v. Crinklaw, 68 F.3d 1073, 1077 (8th Cir. 1995). Plaintiffs' own expert, Dr. Aronov, testified clearly that tests such as the MMPI cannot determine truthfulness. (Ex. 3, Aronov Depo., p. 92.) Whether or not the MMPI would pass a *Daubert* challenge in this context is irrelevant, because the MMPI is being used to test Mr. Rihn's credibility and truthfulness, a function that is strictly reserved for juries.

Furthermore, Dr. Smith uses the MMPI to directly attack the character of Mr. Rihn:

The profile showed his underlying personality to be passive-dependent in relationships, easily hurt by others, unassertive, immature, overly dependent on his wife, shy and inhibited in social situations, and emotionally alienated from others with likely very few friends. This social introversion was predicted to be a stable personality trait over time. He scored high on the marital distress score. "His relationships are likely to be viewed by others as problematic." … "Note: one could develop reactive depressive symptoms after an event, but one would not develop a neurotic personality style as a result." (Ex. 1, pp. 14-15.)

This is a direct attack on the character of Mr. Rihn and an attempt to prejudice the jury against him, buttressed by the supposedly "scientific" evidence of the MMPI. Dr. Smith uses her opinions of Mr. Rihn's personality to suggest that he is only seeking compensation for Mr. Jackson's violent attack on him because of his "neurotic personality style." Apart from the law set forth extensively above that such testimony by an expert is improper, Federal Rule of Evidence 404 bars character evidence, stating that "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith[.]" Dr. Smith should not be allowed to attack and impeach Mr. Rihn's character in this manner.

By judging Mr. Rihn's credibility and character, the MMPI test is also being used by Dr. Smith as essentially a written version of a lie detector or polygraph test.  Courts have similarly recognized these tests to be unreliable and disfavored. See <u>United States v. Scheffer</u>, 523 U.S. 303, 309, 118 S.Ct. 1261 (1998); <u>Ortega v. U.S.</u>, 270 F.3d 540, 548 (8th Cir. (Iowa) 2001); <u>United States v. Messina</u>, 131 F.3d 36, 42 (2d Cir.1997), *cert. denied,* 523 U.S. 1088, 118 S.Ct. 1546, 140 L.Ed.2d 694 (1998); <u>United States v. Stein</u>, 127 F.3d 777, 781 (9th Cir.1997).

Furthermore, Dr. Smith makes no reference to another psychological evaluation of Mr. Rihn, the "MCMI-III" which was produced by the Defendant.  This evaluation found that: "Axis I clinical syndromes are suggested by the client's MCMI-III profile in the areas of Generalized Anxiety Disorder, Adjustment Disorder with Depressed Mood, and **Posttraumatic Stress Disorder**." (Exhibit 4, MCMI – III, p. 2).  The MCMI-III contains the following findings relevant to the assault on Mr. Rihn by the Defendant:

> Related to but beyond his characteristic level of emotional responsivity, this man appears to have been confronted with an event or events in which he was exposed to a severe threat to his life, a traumatic experience that precipitated intense fear or horror on his part.  Currently the residuals of this event appear to be persistently reexperienced with recurrent and distressing recollections, such as in cues that resemble or symbolize an aspect of the traumatic event.  Where possible he seeks to avoid such cues and recollections.  Where they cannot be anticipated and actively avoided, as in dreams or nightmares, he may become terrified, exhibiting a number of symptoms of intense anxiety.  Other signs of distress might include difficulty falling asleep, outbursts of anger, panic attacks, hypervigilance, exaggerated startle response, or a subjective sense of numbing and detachment. (Ex. 4, MCMI – III, p. 5).

Dr. Smith ignores these findings entirely, instead relying only on the MMPI.  Thus, Dr. Smith is willing to rely on conclusions from a psychological test or evaluation when it supports her conclusion that Mr. Rihn is exaggerating his symptoms, but not when it shows evidence of actual psychological injury to Mr. Rihn.  This is clear evidence, again, that the only purpose of

10

Dr. Smith's opinions in this case is to attack Mr. Rihn's credibility and to suggest that he is exaggerating his psychological injuries for the purposes of this lawsuit.

>    **3.    Dr. Smith should be precluded from making any other references to Mr. Rihn's exercise of his legal rights.**

Dr. Smith makes other improper and irrelevant references to Mr. Rihn's use of legal process for the purpose of impeaching his credibility with the jury, including the following:

> "[Dr. Aronov] said I showed signs of depression, hypervigilance, anxiety, stress – that kind of thing. So the attorney on the other side is arguing against that." (Ex. 1, p. 4) [Quoting Gary Rihn]

> Mr. Rihn acknowledged there is a civil suit pending against Mr. Jackson. He reported being uncertain whether Worker's Compensation is involved. "There may have been at the beginning." He denied receiving benefits from Worker's Compensation. He stated the company did pay for the 2 or 3 doctor visits and the psychotherapy with Dr. Aronov. (Ex. 1, p. 6.)

> Mr. Rihn stated he is suing Mr. Jackson for "lost income, moving expenses, and (doctor visit) co-pays with Dr. 'Mak'" (former PMD in Memphis). (Ex. 1, p. 6.)

> [Mr. Rihn in deposition] stated he did file a Worker's Compensation claim. (He expressed first doubt then lack of awareness about this here today.) (Ex. 1, p. 13.)

> Mr. Rihn acknowledged he was claiming (suing for reimbursement of) medical bills, lost wages, and moving expenses. (Ex. 1, p. 13.)

> One attorney's question indicates Mr. Rihn's lawsuit claims he has Posttraumatic Stress Disorder. (Mr. Rihn denied that here today.) (Ex. 1, p. 13.)

These statements are irrelevant and clearly improper. "Accessing the legal system is normally not to be discouraged and, exercising one's right to utilize the legal system within established rules and procedures should normally not be used to attempt to discredit a litigant with a jury." _Carlyle v. Lai_, 783 S.W.2d 925, 929 (Mo.App. W.D. 1989)(Defense counsel's questions regarding when plaintiff first hired attorney constituted prejudicial error; questions were asked "to discredit plaintiffs as avaricious because they sought the services of a lawyer soon after their son's death").

11

These statements are entirely irrelevant and immaterial to Mr. Rihn's injuries or mental state, or any other issue in this case. The only evident purpose for their inclusion in Dr. Smith's report is to impeach the credibility of Mr. Rihn and to cloud the issues with the jury by referencing Worker's Compensation. They are merely part and parcel of Dr. Smith's improper theme attacking Mr. Rihn for exercising his legal rights. Because these statements have no probative value, and clearly prejudice Mr. Rihn, Dr. Smith should be precluded from making these statements or giving any such testimony at trial.

      **C.    Dr. Smith should be precluded from impeaching the credibility of Dr. Aronov, Mr. Rihn's treating physician.**

The rule against allowing expert witnesses to opine on the credibility of other witnesses extends to comments concerning the credibility of other expert witnesses. See <u>Suter v. General Acc. Ins. Co. of America</u>, 424 F.Supp.2d 781, 793 (D.N.J. 2006). In her report, Dr. Smith attacks the credibility of Mr. Rihn's treating physician, Dr. Aronov, by giving her opinion that Dr. Aronov is exaggerating Mr. Rihn's injuries:

> Dr. Aronov felt the prognosis for further recovery was "guarded." (**This is an overly-dramatic and exaggeratedly negative term** for someone who has been working full-duty for a year and a half). (Ex. 1, p. 11.)

Dr. Smith also attacks Dr. Aronov's credibility by referencing the fact that Dr. Aronov had been in contact with plaintiffs' attorneys:

> Dr. Aronov also acknowledged [an] attorney, Mr. Marovich, advised him the civil lawsuit had been filed before he (Dr. Aronov) first evaluated Mr. Rihn. Dr. Aronov also received correspondence from an attorney named Russell Johnson. (Ex. 1, p. 11.)

> Dr. Aronov stated the diagnosis may matter to the attorneys "but it really doesn't matter to me." (Ex. 1, p. 11.)

Again, this is an improper and inadmissible reference to Plaintiffs' use of the legal system, as well as an improper comment on Dr. Aronov's credibility, by suggesting that Dr.

12

Aronov is not testifying truthfully because he is somehow interested in aiding Mr. Rihn's legal claims.  None of these statements have anything to do with evaluating the substance of Dr. Aronov's medical opinions.

Dr. Smith again attempted to bolster her improper and inadmissible opinion that Mr. Rihn is lying about his injuries, with the following statements:

> [Dr. Aronov] acknowledged any individual could familiarize himself with the DSM diagnostic criteria for Posttraumatic Stress Disorder or Adjustment Disorder using the internet. (Ex. 1, p. 11.)
>
> [Dr. Aronov] described himself as 'not competent' to determine whether Mr. Rihn was being truthfrul. He was noncommittal regarding the presence or absence of secondary gain. (Ex. 1, p. 11.)

Again, these statements are only relevant to Dr. Smith's assertion that Mr. Rihn's testimony concerning his injuries is not credible because of this lawsuit.  Otherwise, the statements have no possible probative value with regard to the issues in this case.  These statements are a comment on the credibility both of Mr. Rihn and Dr. Aronov, and as such are inadmissible.

Plaintiffs respectfully submit that Defendant's proposed expert testimony from Dr. Smith attacking the credibility of Mr. Rihn and Dr. Aronov, or of any other witness, improperly and unduly prejudices plaintiffs.  Any such testimony directly invades the province of the jury on the issue of Mr. Rihn's credibility.  Therefore, Plaintiffs respectfully requests that all such testimony, including all of the statements set forth above, be excluded at trial in this case.

In the event the Court overrules Plaintiffs' objections and allows the testimony of Dr. Smith on any grounds, the plaintiffs intend to introduce the following documents as exhibits on cross-examination:

  (1) List of cases in which Stacey Smith has testified, as provided by defendant's counsel; and

  (2) Dr. Smith's depositions in: *Hollis v. FTS Contract Truckers Association*, Division of Workers Compensation, Injury No. 97-402135; *Mattick v. Midwest Foundation Corporation*, Division of Workers Compensation, Injury No. 02-147458; and *McKelvey v. Buchheit Enterprises, et al.,* Division of Workers Compensation, Injury No. 02-130414.

 WHEREFORE, Plaintiffs respectfully request that the Court enter an Order precluding the Defendant from introducing any expert testimony or opinions concerning the credibility of Plaintiffs or any other witnesses, from making any comments or argument to the jury concerning "secondary gain", or otherwise attempting to discredit plaintiffs for exercising their right to utilize the judicial system to seek recovery for their injuries.

        DOWD & DOWD, P.C.

    BY: /s/ DOUGLAS P. DOWD
      DOUGLAS P. DOWD (29240)
      Attorneys for Plaintiffs
      100 North Broadway, Suite 1600
      St. Louis, Missouri   63102
      314/621-2500  Fax, 314/621-2503

**CERTIFICATE OF SERVICE**

 A copy of the foregoing was served by operation of the Court's electronic filing system this 10th day of March, 2008 to Mr. Thomas Magee, Attorneys for Defendant, Moser & Marsalek, P.C., 200 North Broadway, Suite 700, St. Louis, Missouri 63102, 314-421-5640 (fax) and N. Scott Rosenblum, Rosenblum, Schwarts & Rogers, P.C., 120 South Central Avenue, Suite 1550, Clayton, Missouri 63105, 314-862-8050 (fax).

        /s/ DOUGLAS P. DOWD
        DOUGLAS P. DOWD