UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GARY RIHN, et al., | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) Case No. 4:07CV00197 ERW |
| | ) |
| TYOKA JACKSON, | ) |
| | ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion to Bifurcate [doc. #30], Defendant's Motion to Determine Value of Medical Treatment [doc. #31], Defendant's Motion in Limine [doc. #32], Plaintiffs' First Motion in Limine [doc. #35], Plaintiffs' Second Motion in Limine [doc. #36], Plaintiffs' Third Motion in Limine [doc. #37], and Plaintiffs' First Motion to Supplement Post-Hearing Filing [doc. #43].

**I. DEFENDANT'S MOTION TO BIFURCATE**

Defendant requests that the punitive damage phase of the trial be bifurcated from the liability and compensatory damages phase. Plaintiffs do not object to Defendant's Motion to Bifurcate. In accordance with the Court's usual practice, the parties shall first present evidence of liability and compensatory damages; if a finding is made by the jury in favor of the Plaintiffs, the Court shall then submit to the jury the question of punitive damages. No evidence of punitive damages shall be submitted during the first phase, nor shall any mention of punitive damages be made to the jury during the first phase, except, the attorneys may ask one question during voir dire, "[i]s there anyone on the panel who is so opposed to an award of punitive damages that you

1

could not consider evidence supporting punitive damages, or issue an award of punitive damages." If any one responds affirmatively, any follow-up questions will be asked at the bench.

## II. DEFENDANT'S MOTION TO DETERMINE VALUE OF MEDICAL TREATMENT

In this motion Defendant seeks to determine the exact value of Plaintiff Gary Rihn's medical bills, as well as their admissibility. There was some confusion during the hearing on this matter regarding the exact amount of medical bills Plaintiffs seek to admit. However, before a determination needs to be made regarding the amount of Plaintiff Gary Rihn's bills, the Court must determine whether medical bills are admissible without testimony that the treatment was reasonably necessary. Defendant argues that any evidence of medical bills must be supported by medical testimony that the treatment was reasonably necessary. Plaintiffs respond that Plaintiff Rihn is competent to testify regarding the medical treatment that he received, and the bills that were paid.

Missouri statute provides: "Parties may introduce evidence of the value of the medical treatment rendered to a party that was reasonable, necessary, and a proximate result of the negligence of any party." Mo. Rev. Stat. § 490.715.5(1). "For many years Missouri courts have allowed plaintiffs to prove the reasonableness of their medical bills either by having an expert witness testify to their reasonableness, *or* by presenting testimony that the bills had been paid." *Sladky v. Progressive Classics Ins. Co.*, 2006 WL 2246427, *3 (E.D.Mo. August 4, 2006) (emphasis added); *see also Wise v. Towse*, 366 S.W.2d 506, 508 (Mo. Ct. App. 1963) ("The fact that these ex-rays were billed at the rate on the hospital's regular price list and that plaintiff Forrest Wise paid that bill is subject to a fair inference that the charges made and paid were reasonable."). "The plaintiff's testimony of payment is considered sufficient evidence from which the jury can draw an inference that the charges were reasonable, because 'It is presumed that if

the charges were not reasonable [plaintiff] would not have paid them.'" *Sladky*, 2006 WL 2246427, at *3 (quoting *Williams v. Jacobs*, 972 S.W.2d 334, 342 (Mo. Ct. App. 1998)).

The Court concludes that Plaintiff Gary Rihn's testimony that he was billed and that the bills were paid is sufficient to satisfy the Missouri statute that the bills were reasonable and necessary. However, the admission of these bills shall be limited to the amounts that Plaintiffs have actually paid. Plaintiff Gary Rihn is allowed to testify to the $1,107.10 that was paid to Dr. Aronov for psychological treatment, and $2159.40 that was paid for the MRI. Plaintiffs may not present testimony of expected future medical bills without first establishing that such treatment would be reasonable and necessary.

### III. DEFENDANT'S MOTION IN LIMINE

Defendant lists five categories of evidence he seeks to exclude. The Court will address each item, in turn.

1.  Defendant's net worth, or any suggestion that Defendant is a wealthy individual

Plaintiffs' counsel stated during the pre-trial conference that he does not intend to introduce any evidence of Defendant's net worth in the first phase of the trial. However, he does intend to introduce such evidence during the punitive damage stage. The Court agrees that evidence of Defendant's net worth is not relevant to the question of Defendant's liability, or to the amount of compensatory damages. However, such evidence will be admissible in the second phase of the trial. Defendant's motion in limine #1 is sustained in part and overruled in part.

2.  Complaint issued by the FAA against Defendant.

Defendant seeks to exclude any evidence of an FAA complaint that was issued against Defendant, as well as any evidence of the factual conclusions made by the FAA, or evidence that Defendant paid a fine to settle the FAA proceedings. Plaintiffs stated, during the hearing, that

3

they do not intend to introduce as evidence the entire file on the FAA proceedings. However, Plaintiffs do seek to introduce evidence that Defendant violated FAA regulations, through the proposed factual findings of the FAA, as well as through the testimony of Plaintiff Gary Rihn, who was a flight attendant for twenty years. Plaintiffs also stated that they may use statements made by Defendant during those proceedings, for purposes of impeachment. The FAA did not make a final determination of whether Defendant violated FAA regulations. However, the FAA did perform an investigation and produced a Notice of Proposed Civil Penalty. The matter was then settled by the payment of a fine by Defendant.

Federal Rule of Evidence 803 provides a list of items that are not excluded by the hearsay rule, even though the declarant is available as a witness. Fed. R. Evid. 803. Rule 803(8) states, in pertinent part, "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions and proceedings . . ., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8)(C). The Eighth Circuit has held in the context of EEOC reports, that under Rule 803(8)(C) the factual information, contained within the report, is admissible. *Johnson v. Yellow Freight Systems, Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984). However, the Eighth Circuit was careful to emphasize that "it would be ill-advise to shackle the discretion of trial judges with a rule of *per se* admissibility." *Id.* In reaching this decision, the Eighth Circuit relied upon the Supreme Court decision of *Chandler v. Roudebush*, which held that administrative findings of racial discrimination were admissible in a Title VII action. 425 U.S. 840, 863, n.39 (1976) ("Prior administrative findings made with respect to an employment discrimination claim, may of course, be admitted as evidence at a federal-sector trial de novo.").

4

The Court concludes that Plaintiffs may elicit testimony regarding the violation of FAA regulations, limited to the testimony of Plaintiff Gary Rihn. Plaintiffs may also use any statements made by Defendant to the FAA in the course of its investigations for purposes of impeachment. However, Plaintiffs may not introduce evidence of the ultimate conclusion reached by the FAA, the fact that Defendant paid a fine to settle the matter with the FAA, or the transcript of the proceedings before the FAA. Plaintiffs will limit their evidence in accordance with this order. Defendant's Motion in Limine #2 is sustained in part and overruled in part.

3. Testimony of Dr. Neil Aronov beyond that which Dr. Aronov testified to in his deposition or as detailed in his medical records regarding Plaintiff Gary Rihn.

Defendants object to any testimony from Dr. Aronov that would constitute expert testimony. Dr. Aronov has not been certified as an expert witness in this case, but rather is testifying as Plaintiff Gary Rihn's treating psychologist. Plaintiffs do not object to Defendant's motion to limit Dr. Aronov's testimony, as they do not intend Dr. Aronov to testify to subjects outside of his treatment of Plaintiff Gary Rihn. Therefore, Defendant's motion in limine #3 is sustained.

4. Medical Treatment bills for physical injuries by Plaintiff Gary Rihn

The Court fully addressed this issue under Defendant's motion to determine value of medical treatment. Defendant's motion in limine #4 is sustained in part and denied in part, in accordance with the above analysis.

5. That airport police boarded the plane following the incident.

The Court concludes that testimony that the police boarded the plane and escorted the Defendant off the plane is relevant to the issues to be decided by the jury in this case. No

evidence of any later interrogation, detention, or police investigation shall be admitted. Defendant's motion in limine #5 is overruled.

## IV. PLAINTIFFS' FIRST MOTION IN LIMINE

Plaintiffs seek to exclude statements made by Defendant's expert witness, Dr. Stacey Smith, that relate to the credibility of Plaintiff Gary Rihn and Plaintiff Gary Rihn's treating psychologist, Dr. Aronov.[1] Plaintiffs argue that credibility determinations are to be made only by the jury. Defendant seeks to illicit testimony regarding Dr. Smith's assessment of Plaintiff Gary Rihn, which entails testimony regarding secondary gain and litigation syndrome.

The law is well settled, as found by the Eighth Circuit, that credibility determinations are to be made by the jury, not by expert witnesses. *See United States v. Azure*, 801 F.3d 336, 340 (8th Cir. 1986). In *Azure*, the Eighth Circuit addressed in detail what testimony was admissible, that would aid the jury in making a credibility determination, and what testimony was inadmissable as invading the province of the jury. *Id.* at 340-341. Testimony which serves to aid the jury is admissible, for example, the expert in *Azure*, was permitted to testify to patterns of consistency that were typical in the stories of child sexual abuse victims, and to compare those patterns with the story of the child witness in that case. *Id.* at 340. However, the Eighth Circuit concluded that general statements regarding the believability of the witness' story were inappropriate. *Id.* at 341 ("However, by going further and putting his stamp of believability on

---

[1] Plaintiffs' attorney stated, during the hearing, that Plaintiffs were not made aware that the Defendant intended to have Plaintiff Gary Rihn examined by Dr. Smith for such an extended period of time. Following the hearing, Plaintiffs filed with the Court copies of the communications between Plaintiffs' attorney and Defendant's attorney on this matter. The Court has reviewed the correspondence, and concludes that Defendant properly notified Plaintiffs regarding the purpose of the scheduled psychological examination, and that Plaintiff Gary Rihn would be examined by Dr. Smith. Furthermore, the Court notes that any misunderstanding by Plaintiffs' attorney is immaterial. Defendant had a right to examine Plaintiff Gary Rihn by their own expert.

6

Wendy's entire story, Dr. ten Bensel essentially told the jury that Wendy was truthful . . . . No reliable test for truthfulness exists and Dr. ten Bensel was not qualified to judge the truthfulness of that part of Wendy's story.").

In accordance with the conclusions reached by the Eighth Circuit, the Court finds that any general statements by Dr. Smith regarding the truthfulness of Plaintiff Gary Rihn are inadmissible. Furthermore, any statements regarding conflicting factual statements are also inadmissible. Dr. Smith may testify regarding her discussions with Plaintiff Gary Rihn, and her conclusions based on the psychological evaluations. Dr. Smith may also testify to the psychological principal of secondary gain or litigation syndrome, as well as the indicators of those phenomenoms. However, Dr. Smith is not to comment on the truthfulness of Plaintiff Gary Rihn's statements or symptoms. Dr. Smith shall not comment on the timing of Plaintiff Gary Rihn seeking Dr. Aronov's treatment. The fact that a plaintiff may seek medical treatment after consulting with an attorney may not be used to prejudice the plaintiff. Finally, Dr. Smith is not permitted to testify regarding Dr. Aronov's motivation for his diagnosis in this case, nor is she to comment in any way on the credibility of Dr. Aronov's statements. Credibility determinations of both Plaintiff Gary Rihn, and his treating doctor, Dr. Aronov, are strictly left to the province of the jury. Plaintiffs' first motion in limine is sustained in part and overruled in part.

## V. PLAINTIFFS' SECOND MOTION IN LIMINE

Plaintiffs' second motion in limine addresses many of the items previously discussed, however, the Court will briefly address the subject of Plaintiffs' second motion. Specifically, in their second motion in limine, Plaintiffs seek to exclude any evidence of secondary gain or litigation syndrome through the testimony of Dr. Aronov, who is Plaintiff Gary Rihn's treating psychologist. As stated above in reference to Defendant's motion in limine, Dr. Aronov has not

been designated as an expert witness in this case, and therefore his testimony is to be limited to his treatment of Plaintiff Gary Rihn. Neither Party is permitted to ask any questions of Dr. Aronov that are beyond the scope of his treatment of Plaintiff Gary Rihn. Plaintiffs' Second motion in limine is sustained.

## VI. PLAINTIFFS' THIRD MOTION IN LIMINE

Plaintiffs' third motion in limine seeks to exclude character witnesses that will testify that the actions alleged by Plaintiffs against Defendant are inconsistent with Defendant's usual conduct. Defendant does not seek to introduce this evidence during the first phase of the trial, but rather argues that such evidence is relevant to the issue of punitive damages. The Court agrees with both parties that the testimony of the character witnesses referenced above is not relevant to the question of liability or compensatory damages, and therefore is not admissible in the first phase of the trial. However, the Court must determine whether such evidence is relevant during the punitive damage phase.

The Missouri Court of Appeals, in a recent opinion, listed a number of factors that may be considered by a jury determining the appropriateness of punitive damages. *Smith v. Brown & Williamson Tobacco Corp.*, 2007 WL 2175034, at *46 (Mo. Ct. App. July 31, 2007). These factors include: (1) the age of the injured party; (2) the character of the defendant; (3) the character of the injured party; (4) the injury suffered; (5) the defendant's standing or intelligence; (6) the age of the injured party; and (7) the relationship between the two parties. *Id.* at 46; *see also Call v. Heard*, 925 S.W.2d 840, 849-850 (Mo. 1996).

While the character of the Defendant may not be relevant to the issue of liability, it may be relevant to the question of what damage award is necessary to punish the Defendant for his actions. Therefore, the witnesses listed by the Defendant as character witnesses, will be permitted

to testify during the punitive damage phase. Plaintiffs' third motion in limine is sustained as to any testimony by character witnesses during the first phase of the trial, and is overruled as to such testimony during the second phase.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Bifurcate [doc. #30] is **GRANTED**. The jury trial in this action shall proceed in two phases. The first phase shall address the issues of liability and compensatory damages, and the second phase will address punitive damages.

**IT IS FURTHER ORDERED** that Defendant's Motion to Determine Value of Medical Treatment [doc. #31] is **GRANTED**. Testimony presented by Plaintiffs regarding the value of medical treatment shall be limited in accordance with the above order.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine [doc. #32] is **SUSTAINED in part** and **OVERRULED in part**, in accordance with the above order.

**IT IS FURTHER ORDERED** that Plaintiffs' First Motion in Limine [doc. #35] is **SUSTAINED in part** and **OVERRULED in part.**

**IT IS FURTHER ORDERED** that Plaintiffs' Second Motion in Limine [doc. #36] is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Third Motion in Limine [doc. #37] is **SUSTAINED in part** and **OVERRULED in part**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Supplement Post-Hearing Filing [doc. #43] is **GRANTED**.

Dated this <u>18th</u> Day of <u>March</u>, 2008.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE